**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-20385-CV-GRAHAM/BANDSTRA

WILLIAM APPEL, ROY WIIK, ANNE WIIK,
LESLIE ALLOCCO, and LINDA DAWSON,
     Plaintiffs,

v.

LIBERTY AMERICAN INSURANCE COMPANY,
LIBERTY AMERICAN INSURANCE GROUP, INC.,
MOBILE HOMEOWNERS' INSURANCE
AGENCIES, INC., a Florida corporation,
*now known as* LIBERTY AMERICAN
INSURANCE SERVICES, INC., and,
MOBILE USA INSURANCE COMPANY, *now known*
*as* LIBERTY AMERICAN SELECT INSURANCE
COMPANY,

     Defendants.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs William Appel, Roy Wiik, Anne Wiik, Leslie Allocco, and Linda Dawson

submit the following Memorandum of Law in support of the Motion for Preliminary Approval of

the Parties' proposed Settlement, as set forth in the Parties' Settlement Agreement (attached to

the Motion as Exhibit A).

**I.**     **INTRODUCTION**

Named Plaintiffs and Settlement Class Members were insureds named in mobile home

insurance policies (the "Policy") issued on their mobile homes under Defendants' mobile home

insurance programs [DE 118 at ¶¶ 11, 28-31, 60-65]. In this Action, Named Plaintiffs alleged

they had suffered catastrophic damage to their homes and were not fully compensated under their

Policies. Central to Named Plaintiffs' claims were the words "Replacement Cost Mobile Home"

which appeared on the Policies' Declarations Pages. In their First Amended Complaint, among other things, Named Plaintiffs alleged that Defendants materially breached their Policy by settling their claims for the Policy Limits stated on the Declarations Pages of the Policies, rather than a full replacement-cost basis which could exceed the Policy's stated Policy Limits. Defendants vigorously opposed Named Plaintiffs' interpretation of the Policy and denied any liability relating to the Policy and Defendants' alleged claim settlement practices.

This litigation has been comprehensive and highly contentious.  Since the case was filed in early 2008, there have been several motions to compel; multiple jurisdictional and standing challenges; multiple motions to dismiss; and an unsuccessful appeal to the Eleventh Circuit, which was followed by full briefing on class certification bolstered by numerous adverse exhibits and testimony. The settlement negotiations were just as fractious.[1]  The Parties' first attempt at mediation ended in an impasse.  After Defendants' appeal to the Eleventh Circuit was resolved, this Court ordered the Parties to undergo a second mediation under the auspices of the experienced mediator, Rodney A. Max, Esq., principal with Upchurch Watson White & Max Mediation Group.  After the Parties completed difficult settlement negotiations and several mediation sessions navigated by Rodney A. Max,[2] the Parties have reached a settlement of this Action, memorialized in the Settlement Agreement attached as Exhibit A to the Joint Motion for Preliminary Approval of Class Action Settlement.

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides for Settlement Class Members.  As set forth in the Settlement Agreement, the Settlement

---

[1]     The evolution of Litigation is outlined in the Declaration of Tod Aronovitz ["Aronovitz Decl."] filed herewith as **Exhibit A.**
[2]     Mr. Max has submitted a Declaration ["Max Decl."] attached as **Exhibit B** hereto, which memorializes the Parties' mediation sessions and settlement negotiations.

provides Settlement Class Members a Common Fund of \$40,000,000,[3] which Defendants will use to make Claims Payments to Settlement Class Members who submit qualifying Claims Forms. The Settlement also requires Defendants at their sole expense to provide notice of the Settlement via direct mail and, if necessary, by publication; and Defendants must pay all administrative costs of implementing the Settlement, including establishing a website, a toll-free information line with live responders, a centralized post-office box, and a process to refer disputed Claims Payments to a Neutral Evaluator.[4]

In light of the extensive monetary relief and claims process under the Settlement Agreement and the exhibits attached thereto; and the discussion below, the Court should find the Settlement to be well within the bounds of reasonableness and as such a Settlement Class should be certified and the Settlement Agreement should be preliminarily approved.

## II.   HISTORY OF THE LITIGATION

### A.  Pleadings, Motions and Appeals

The record demonstrates that the Parties pursued their opposing positions comprehensively and zealously.  On February 14, 2008, Named Plaintiffs filed their initial class-action complaint [DE 1].[5]  On May 22, 2008, Defendants filed their first round of motions to dismiss. [DE 12-13].  On June 16 and June 25, 2008, Named Plaintiffs filed their responses to Defendants' motions to dismiss supported by 19 exhibits drawn from various publically available resources [DE 19; DE 20; DE 22].

---

[3]      Settlement Agreement, § VIII at ¶ 65.
[4]      Settlement Agreement, §§ III-IV, VII, IX.
[5]      On December 8, 2008, original plaintiff Donald Rachiele was dismissed from the case pursuant to a stipulation of the Parties [DE 71].

From July through October 2008, the Parties held discovery conferences and the Court adjudicated several disputes and other matters concerning Rule 26 disclosures and discovery. [DE 31 through DE 41; DE 44 through DE 58]. In an opinion dated November 25, 2008 [DE 59], the Court denied Defendants' first round of motions to dismiss [DE 12-13] with the proviso that the Parties may engage in discovery regarding jurisdictional challenges Defendants raised in their motions to dismiss [DE 59 at 31]. The Court later reiterated its ruling [DE 69], and the Parties engaged in extensive discovery-related motion practice, elucidated by full briefings on several motions to compel [DE's 72, 76-77, 84-85, 89, 92-93, 95-96] and on motions for protective orders. [DE's 66, 73, 76, 145, 151, 153, 155-156].

On December 23, 2008, Named Plaintiffs filed their First Amended Complaint [DE's 79-80, 118]. Defendants in turn filed a second motion to dismiss on February 2, 2009 alleging, among other things, lack of jurisdiction and standing [DE 102] and for Plaintiffs' alleged failure to invoke the appraisal provision of the Policy [DE 103]. After these motions were fully briefed [DE's 107-109, 111-114], the Court entered an order denying them on July 1, 2009 [DE 124]. Defendants filed their Answers and (numerous) Affirmative Defenses to Plaintiffs' First Amended Complaint on July 22, 2009 [DE's 131 through 135].

On July 29, 2009, Defendants took an interlocutory appeal of the Court's July 22, 2009 order denying their second round of dismissal motions [DE 124]. Upon Defendants' request, on October 23, 2009, the Court entered a stay pending Defendants' appeal [DE 160], and the case was administratively closed [DE 161].

On April 4, 2011, the Eleventh Circuit dismissed Defendants' appeal [DE 168]. The case

was then re-opened on May 4, 2011 [DE 174].  On June 27, 2011, Named Plaintiffs filed their Motion for Class Certification with several supporting exhibits and declarations [DE 183].  On July 14, 2011, Defendants filed their Response in Opposition to the Motion for Class Certification supported by 20 opposing exhibits and expert declarations [DE 192].  Named Plaintiffs filed their reply on August 1, 2011, supported by additional rebuttal exhibits including expert testimony [DE 197].

### B.  Discovery and Investigation

To support the Parties' hard-fought motion practice outlined above, this case necessitated extensive investigation and discovery [Aronovitz Decl. at ¶¶ 7, 8, 9, and 19-29].  Briefs filed with dispositive motions were supported by public records and other supporting documents gathered by the Parties [DE's 12-13, 20, 22-2, 102-103, 105, 107, 183, 192, 197].  There were several versions of Rule 26 disclosures [DE's 38, 50, 62]; there were opposing requests for production of documents [Aronovitz Decl. at ¶¶ 20, 21, 23]; and there were interrogatories from both Parties [DE's 183-5, 192-17 through 192-20].  Plaintiffs served Defendants with 127 requests for admissions [DE 183-2].  Throughout the litigation, the Parties held numerous meet-and-confer sessions concerning the Parties' disputed discovery requests and the scope of the Parties' production of documents in response thereto [Aronovitz Decl. at ¶ 23].  As a result of Plaintiffs' discovery requests, Defendants produced thousands of pages of documents, all of which Class Counsel reviewed and analyzed [Aronovitz Decl. at ¶¶ 19, 23, 29].

The Parties also conducted several depositions of each other's principals and witnesses [Aronovitz Decl. at ¶ 24]: Class Counsel took the deposition of Defendants' Fed. R. Civ. P. 30(b)

(6) IT designee on December 8, 2008 [DE 186]; Defendants' former Vice President for claims on October 14, 2009 [DE 183-1]; and several other officers of one or more of the Defendants [Aronovitz Decl. at ¶ 24]. Defendants deposed each Named Plaintiff whose testimony Defendants used to buttress their opposition to Plaintiffs' Motion for Class Certification [DE's 192-11, 192-13,192-14, 192-15].

## C.  SETTLEMENT NEGOTIATIONS

While the Court's second dismissal order was on appeal [DE 124], the Parties participated in the Eleventh Circuit's mediation program on October 13, 2009 [Aronovitz Decl. at ¶ 30].  Despite their best efforts, that mediation resulted in an impasse [*id.*].  However, following the Eleventh Circuit's denial of Defendant's appeal in April 2011, interest in settlement re-kindled.  On June 6, 2011, the Court referred the Parties to mediation [DE 178] and scheduled mediation [DE 190] before experienced mediator, Rodney A. Max, Esq., principal with Upchurch Watson White & Max Mediation Group.[6]

The mediation sessions and discussions guided by Mr. Max focused on relief for class members [Aronovitz Decl. at ¶¶ 32-33; Max Decl. at ¶ 14].  Mr. Max met with counsel for Named Plaintiffs on July 6, 2011 [Max Decl. at ¶ 11].  Thereafter, he met with all Defendants and their counsel on July 22, 2011 [*id.*].  Mr. Max then met with counsel for both sides in Chicago, on July 27, 2011, to confer jointly in order to establish the agenda for the ultimate mediation in Miami on August 3-4, 2011 [*id.*].

---

[6]     Mr. Max's law practice has focused on alternative dispute resolution with an emphasis on mediation since 1992, and that he has conducted "well over 5000 mediations involving over 10,000 cases" [Max Decl. at ¶¶ 3, 6].

As Mr. Max indicates in his Declaration, the proposed Settlement is the product of lengthy and particularly difficult negotiations which took place over many hours on August 3-4, 2011.  Mr. Max describes these difficult two days as follows:

> The caliber of the representation of both sides was extraordinary in my experience. The mediation consisted of two day long mediation sessions among myself and counsel for the plaintiffs and defendants.  Several officers of defendants and Plaintiff class representatives also attended.
>
> These lengthy negotiations were exhausting, and at times frustrating, for the parties and their counsel. The sessions involved discussions with all counsel and representatives of those parties who were present, extended sessions with each side, bi-lateral discussions with counsel, and ex parte discussions with the parties concerning their various positions. The discussions allowed the parties to express their respective views of the strengths and weaknesses of the respective positions in the case.  I never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial.  At several points, the negotiations almost broke down.  In the evening of day one of the mediation each side asked for an adjournment.  I persisted in requesting participants to return to the table for one last day. Negotiations were put back on track only after my efforts with each side in ex parte talks to bring them together.  Resolution was ultimately achieved at the end of day two.

[Max Decl. at ¶¶ 12, 14].

As a result of the above-described mediation sessions and conferences steered by Rodney Max, the Parties have reached the settlement they are now proposing that the Court preliminarily approve.  The Parties also request that the Court conditionally certify the Settlement Class set forth in their Settlement Agreement ("Agreement"), which is attached as Exhibit A to the Joint Motion for Preliminary Approval of Class Action Settlement.[7]

## III.    SETTLEMENT TERMS

---

[7]    Philadelphia Consolidated Holding Corporation ("PCHC") was dismissed as a Defendant pursuant to Stipulation of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). [DE 205] PCHC is a Releasee under the terms of the Settlement Agreement. Settlement Agreement, § XIII at ¶ 82.

The Settlement Class the Parties propose the Court certify for purposes of the settlement is defined as:

All persons who, from September 1, 2003 through and including December 31, 2006,

    A.    purchased or maintained in-force mobile home insurance (sometimes referred to as "Manufactured Homeowners Insurance") Policies issued by one or more of the Defendants in the State of Florida, which Policies included the words "Replacement Cost Mobile Home" on the Policies' Declarations Pages;

    B.    suffered losses to their mobile homes insured under those Policies in the State of Florida;

    C.    made claims for insurance benefits to one or more of the Defendants for damages to those insured mobile homes; and

    D.    received payment(s) in a single policy year in total at least equal to the stated Policy Limits for Coverage A – Dwelling under their Policies.

Excluded from the Settlement Class are (i) Defendants and their parents, subsidiaries, affiliates, and any of their current officers, directors, and employees; (ii) all officers, employees, and agents of Class Counsel, counsel of record for Defendants, the Neutral Evaluator, and their immediate families; (iii) any entity in which any of the persons or entities in (i) and (ii) above have a controlling interest, and the legal representatives, heirs, successors, and assigns of such person or entity; and (iv) members of the Southern District of Florida judiciary and their immediate families.[8]

### A. Monetary Relief Under the Settlement

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides for Settlement Class Members.  The Settlement Agreement provides that Settlement Class Members shall look solely to a Common Fund[9] of $40,000,000 for settlement and satisfaction of all claims.  Settlement Class Members or their lawful representatives[10] may submit Claims

---

[8]    Settlement Agreement, , § I at ¶ 29.

[9]    This is a claims-made settlement.  Settlement Agreement, § IX at ¶ 66. "The term 'Common Fund' shall refer to the funds that shall be distributed to qualifying Settlement Class Members under the terms of th[e] settlement…" Settlement Agreement, § VIII at ¶ 65.

[10]    Settlement Agreement, § VII at ¶¶ 62-63.

Forms for total amounts not to exceed $40,000,000 in the aggregate.  To receive a Claims Payment, a Settlement Class Member or his/her Legally Authorized Representative must, among other things, (a) truthfully, accurately, and completely fill out, sign, and notarize the Claim Form; (b) provide any necessary documentation to qualify for a Claims Payment; and (c) mail the Claim Form, with first class postage prepaid, to the Settlement Administrator postmarked on or before the Claims Submission Deadline (sixty (60) days after the Final Approval Hearing).[11] The amount of a Settlement Class Member's Claim Payment depends on his or her Policy Limits stated in "Coverage A" on the Policy's Declarations Pages and what proof he or she may have of what it cost him or her to remedy his or her losses above and beyond what the Settlement Class Member was paid for his or her claims by Defendants.  The claims process offers two levels of potential relief to Settlement Class Members:[12] (1) Settlement Class Members who do not have or do not wish to submit proof of their replacement or repair costs may receive a "Level 2 Payment," which is one-third of the maximum potential Claims Payment; (2) Claims Payments to Settlement Class Members who wish to submit proof of their replacement or repair costs may do so to receive a "Level 1 Payment" which is calculated as a percentage of their stated Policy Limits pursuant to a stratification methodology set forth in the Settlement Agreement.[13] Additionally, in an effort to reasonably compensate the highest number of Settlement Class Members, if Settlement Class Members submit proof of their replacement or repair costs but the total is less than the sum of the Policy Limits under Coverage A plus the Level 1 Payment, the

---

[11]     The Settlement Agreement details the contents and processing of these forms and attaches a copy of an agreed-upon Claim Form format which is attached to the Settlement Agreement as Exhibit 4. Settlement Agreement, § VII at ¶¶ 61-63.

[12]     The Parties have submitted the Report of William J. Berglund on the Proposed Settlement Methodology dated September 23, 2011, attached hereto as **Exhibit C**, which explains the rationale for this two-tiered approach.

[13]     Settlement Agreement, § IX at ¶ 68.

payment shall be, dollar-for-dollar, the substantiated amount, up to the Level 1 Payment, but not less than the Level 2 Payment. For example, if the Level 1 Payment is $5,000, and the Settlement Class Member substantiates that he or she spent $2,500 more than his Policy Limit under Coverage A to repair or replace the damaged mobile home with property of like kind and quality, the Settlement Class Member would receive $2,500. The claims process is intended to be a less time-consuming and burdensome process than required under the strictures of the Policy, irrespective of the Claims Payment category Settlement Class Members choose. No property appraisers or claims adjusters are involved (as would be the case under the Policy for disputes over the amount of any claim). The Claim Form presents objective criteria Settlement Class Members may fairly satisfy to receive relief.[14]   In the case of a disputed claim, the Parties have included a provision in the Settlement Agreement for a Neutral Evaluator to review and finally decide the appropriate relief for the Settlement Class Member.[15]

### B.  Class Notice and Claims Administration

Furthermore, the Settlement Agreement requires Defendants to establish, maintain, and entirely pay for a transparent settlement administration process, including a Settlement Administrator (Dahl, Inc.);[16] a settlement website;[17] a toll-free information line with taped FAQs, a voicemail box, *and* live responders;[18] a centralized post-office box to correspond with Settlement Class Members;[19] a process to refer objectors and opt-outs;[20] a detailed process for

---

[14]      Claim Form, **Exhibit D** attached hereto.
[15]      Settlement Agreement, § II at ¶ 34; § IX at ¶ 70(d).
[16]      *Id.*, § III at ¶ 37.
[17]      *Id.*, § IV at ¶ 48.
[18]      *Id.*, § IV at ¶ 47.
[19]      *Id.*, § III at ¶ 39.
[20]      *Id.*, §§ V and VI.

administering Claims Payments for Settlement Class Members;[21] and a 21-day window for Settlement Class Members to cure any technical deficiencies in the forms or proofs they originally submit.[22] Under the settlement, the Parties will seek appointment of a Neutral Evaluator to decide disputed claims,[23] whose services will be paid for entirely by Defendants.[24] None of the costs related to the claims processing and settlement administration will reduce any benefits to Settlement Class Members.

The Settlement also establishes the procedures Defendants must follow to provide at their sole expense[25] individual written notice and, if necessary, published notice to Settlement Class Members. (A copy of the proposed Mailed Notice is attached as Exhibit 2 to the Settlement Agreement; and the proposed Published Notice is attached as Exhibit 3 to the Settlement Agreement.) Within fifteen (15) days after the Court enters an order preliminarily approving the Parties' Settlement Agreement, Defendant will provide individual, Mailed Notice of this Settlement to Settlement Class Members via First-Class Mail.[26] In addition to notifying Settlement Class Members via First-Class direct mail, the Settlement Agreement provides for publication notice if the Settlement Administrator is unable to certify to the Parties, by no later than twenty-five days after the Mailed Notice Date, that the Mailed Notice reached at least 85% of the Settlement Class Members. If the Settlement Administrator cannot so certify, the Settlement Administrator will run 1/4-page ads for one day each, in a weekday edition of two

---

[21] *Id.*, § IX, ¶ 70.
[22] *Id.*, § IX at ¶ 70(a).
[23] *Id.*, § II at ¶ 34.
[24] *Id.*, § VIII at ¶ 64, § IX at ¶ 73 .
[25] *Id.*, § VIII at ¶ 64.
[26] *Id.*, § IV at ¶ 43.

Florida newspapers including a Spanish-language newspaper.[27]  Again, none of these costs will reduce any benefits to Settlement Class Members.

### C.  Objectors, Interveners and Opt-Outs

The Parties also propose that the Court establish the deadlines and procedures for objectors and/or interveners set forth in the proposed Mailed Notice to ensure that that all interested persons are afforded a reasonable opportunity to be heard and that the Final Approval Hearing may be conducted in an orderly, efficient, and just manner.  First, the proposed Settlement provides a procedure for any Settlement Class Member who wishes to opt-out of the settlement.[28]  Moreover, any Settlement Class Member or governmental entity that wishes to object to the proposed Settlement or to intervene must do so by filing a written statement or motion to intervene, containing all information required by the proposed Mailed Notice[29] with the Court on or before sixty (60) days after the Mailed Notice Date.  Second, any lawyer who intends to appear or speak at the Final Approval Hearing must enter a written notice of appearance with the Court on or before sixty (60) days after the Mailed Notice Date.[30]  Third, any objector and/or intervener who does not properly and timely object in the manner set forth above and described more fully in the proposed Mailed Notice, will not be permitted to appear at

---

[27]    *Id.*, § IV at ¶ 46.

[28]    To be timely, requests for exclusion must be postmarked no later than sixty (60) days after the Mailed Notice Date, and simply must include the following statement:  "I want to be excluded from the Appel v. Liberty American Insurance settlement." Settlement Agreement, § V at ¶ 51.

[29]    The objection must contain at least the following:  (1) a heading that refers to the Action by case name and Case Number; (2) a statement whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number; (3) a statement of the specific legal and factual basis for each objection; and (4) a description of any and all evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, including but not limited to the names and expected testimony of any witnesses. Settlement Agreement, § VI at ¶ 57.

[30]    Settlement Agreement, § VI at ¶ 58.

the Final Approval Hearing or to object, or to intervene in the case.[31] The Settlement Agreement also provides for the Court's Preliminary Approval Order to contain a temporary injunction enjoining other proceedings relating to the Released Claims in order to preserve the status quo pending the Court's final decision on the reasonableness and fairness of the settlement [Settlement Agreement, at ¶ II, 36(p)].[32]

## IV.   THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS

"[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'"  *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D., 457, 466 (S.D. Fla. 2002) (citation omitted); *see Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (same); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same). Moreover, "[i]n evaluating a settlement's fairness, 'it should [not] be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'"  *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (quoting *Cotton*,

---

[31]    *Id.*, § VI at ¶¶ 55.

[32]    Such injunction is authorized under the All Writs Act, 28 U.S.C. 9 1651(a), which provides, in pertinent part, that federal courts "may issue all writs necessary or appropriate in aid of  their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 5 1651(a); *see Henson v. CIBA-GEIGY Corp*., 261 F.3d 1065, 1068 (11th Cir. 2001). Settlement injunctions are commonly employed. *See, e.g., Fresco v. Auto Data Direct, Inc*.  2007 WL 2330895, 10 (S.D.Fla.,2007) (enjoining settlement class members from "commencing, continuing or taking any action in any judicial proceeding in any state or federal court or any other judicial or arbitral forum against the released parties in the proposed Settlement with respect to any of the claims or issues covered by the proposed Settlement"); *In re Synthroid Mktg. Litig*., 197 F.R.D. 607, 610 (N.D. Ill. 2000) ("An injunction, where necessary to protect the court's earlier orders, including preliminary approval of the settlement of this class action, is authorized under the All Writs Act."); 7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane Federal Practice & Procedure § 1798.1 ("Once a settlement has been approved, then an injunction barring parallel litigation may be justified in order to protect and effectuate the court's order regarding those settlements.").

559 F.2d at 1330); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (same).

"Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co*., 2010 WL 2401149, 2 (S.D. Fla. 2010) (citations omitted).  In the first step, the Court determines whether the proposed settlement should be preliminarily approved.  *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004).  In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved.  *See id*. §§ 21.633-35.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason*." Wm. Wrigley Jr. Co*., 2010 WL 2401149, 2 (citations omitted).  At the preliminary approval stage, the court makes the preliminary determination whether the proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify notice to the class of the settlement and the setting of a final fairness hearing to decide whether the proposal is indeed fair, reasonable and adequate in the ultimate sense. *In Re Amino Acid Lysine Antitrust Litigation*; *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *See* 4 Herbert N. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("Manual") §21.632 (4th ed. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dis. LEXIS 37863, at *11-*12 (S.D. Fla. May 11, 2007)(internal citations omitted); *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984)(A proposed settlement must be "fair, adequate and reasonable and [not] the product of

collusion between the parties.").

Here, there are several reasons why the proposed Settlement Agreement is within the realm of reasonableness and warrants notice of it to Settlement Class Members:

### A.  The Settlement Provides Substantial Relief

"[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Beherens v. Wometco Enterprises, Inc.*, 18 F.R.D. 534, 542 (S.D. Fla. 1988).   This Settlement meets a critical test in gauging its fairness and reasonableness because it provides significant, concrete relief to affected class members (far above "a hundredth or even a thousandth of a single percent") and directly remedies the injury alleged in the Action.  The gravamen of Named Plaintiffs' Second Amended Complaint was that they and Settlement Class Members were underpaid for the losses of their mobile homes insured by Defendants.  Accordingly, the proposed Settlement creates a Common Fund in the amount of forty-million dollars ($40,000,000) to compensate Settlement Class Members whose homes were damaged in an amount exceeding their Policy Limits.  Settlement Class Members will be able to receive a Claim Payment, as described above, either by electing a claims process designated as the "Level 2 Payment" or by electing the "Level 1 Payment," which allows Settlement Class Members to submit proofs of the expenses they incurred upon replacing or repairing their insured mobile homes. The Settlement thus directly addresses the claimed harm.

### B.  The Settlement Provides Immediate Relief to Over 7700 Class Members

That this Settlement would eliminate the delay and expenses of litigation also strongly weighs in favor of approval. *See e.g.*, *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because

it "avoids the costs, delays and multitudes of other problems associated with them." *Id.* at 1013. "[C]lass action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation. In this respect, [as this Court has observed] '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (citation omitted).

Here, Defendants are no longer doing business in Florida.[33]  Absent a settlement, the final resolution of this litigation through the trial process may require several more months or years of protracted adversarial litigation and appeals, which will delay relief to over 7700 Settlement Class Members, whose homes were damaged four or more years ago.  The proofs necessary to prevail at trial in this case would be greater than what is required under the Settlement.  Settlement Class Members may receive relief (a "Level 2 Payment") under the Settlement without any documentation whatsoever.  It is clearly advantageous for Settlement Class Members or their Legally Authorized Representatives to now be eligible to obtain this significant monetary relief without further delay or extensive proofs.  No appraisals are involved in the Settlement. By reaching this Settlement, the Parties will avoid further protracted litigation and will establish a means for prompt, streamlined resolution of Settlement Class Members' claims against Defendants with relaxed burdens of proof.  Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the potential evidentiary issues, and the possibility of further appellate review, the availability of prompt relief under the Settlement is highly beneficial to Settlement Class Members.

---

[33]    *See* http://www.phly.com/ebrochure/LandingPages/LibertyAmerican.htm.

### C. The Settlement is the Product of Serious, Informed, Non-collusive Negotiations and Years of Litigation

Furthermore, where a settlement such as this one results from "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted).   The fact that Parties who fervently opposed each other overcame their differences with assistance from an experienced mediator underscores the point that the Settlement was anything but collusive.[34]

Here, as detailed above, this Action has been highly contentious since it was filed in early 2008—involving several motions to compel from both Parties; several motions to dismiss; a hotly contested class certification motion; and an appeal to the Eleventh Circuit, which was rejected.  Discovery was hard-fought, extensive and involved several requests for information and documents, depositions, discovery conferences and status reports to the Court.  Settlement negotiations were just as fractious.  The Parties' first mediation ended in an impasse. With the critical issue of class certification looming (and after full briefing on class certification was completed), the Parties engaged the services of mediator Rodney A. Max, Esq., of Upchurch Watson White & Max Mediation Group, an experienced and skilled mediator, who, after numerous in-person mediation sessions and conference calls assisted the Parties to reach the Settlement. By the time these sessions occurred, Class Counsel and Defendants' Counsel, who

---

[34]    *See, e.g., Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

are experienced in prosecuting complex class action claims such as these,[35] had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986). In the context of this case and the settlement discussions set forth above, the Settlement is the product of well-informed, arms-length negotiations that weighs heavily in favor of preliminary approval.

### D.   Settlement Class Members Will Be Afforded Ample Due Process

Also, as stated above, a central aim of the preliminary approval process is to authorize notice and provide notice of the settlement to the class so that the merits of the settlement can be reviewed by all those affected. Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The proposed Settlement Agreement including the proposed claims process provides numerous avenues for Settlement Class Members to make informed evaluations of the Settlement and decide whether they want to be bound by it or not.

The Settlement sets up a claims process for Settlement Class Members to recover monetary relief. Class actions which are predominantly for monetary relief fall under Rule 23(b) (3)'s certification requirements. "Individual members in a Rule 23(b) (3) action have a right to opt out of the class proceedings." David F. Herr, *Manual for Complex Litigation* § 21.311 at 287 (4th ed. 2004). The fundamental purpose of class notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1480 (D.C. Cir. 1992) (citing *Eisen v. Carlisle &*

---

[35]     Aronovitz Decl. at ¶ 31.

*Jacquelin*, 417 US 156, 173-74 (1974)). "Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort." *Id*.; *see* Wright, Charles Alan and Miller, Arthur R*., 7AA Fed. Prac. & Proc. Civ.* § 1786 (3d ed.).

In this case, Defendants have identified all of the names, addresses, and Policies of the over 7700 Settlement Class Members.[36]  "When the names and addresses of most class members are known, notice by mail usually is preferred."  David F. Herr, *Manual for Complex Litigation* § 21.311 at 287 (4th ed. 2004).  Hence, the Parties' Settlement Agreement provides for individual Mailed Notice along with Publication Notice, if necessary.  The Settlement Agreement additionally provides for a toll-free information line and a website, which will display notice of the Settlement and constitute a third means of notifying Settlement Class Members. These multiple avenues of notice called for in the Settlement Agreement more than satisfy due process to support the Settlement's preliminary approval.[37]

Rule 23 also establishes content requirements for class-action notices.  The standards for the content of Rule 23(b)(3) class notices are set forth in Rule 23(c)(2) (b), Fed. R. Civ. P., which provides in pertinent part that the "notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;

---

[36]  *See* DE 183, n. 19 and n. 40, and materials cited therein.

[37]  *See Peters*, 966 F.2d 1483, 1486) ("[N]otice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.' "); *UAW v. General Motors Corp*., 2006 WL 891151, 34 (E.D. Mich. 2006); *Johnson v. GMAC Mortgage Group, Inc*., 2006 WL 2433474, *4 (N.D. Iowa 2006) (first class mail to class members' last known addresses satisfies notice requirement); *In re VMS Ltd. Partnership Securities Litigation,* 1995 WL 355722, 1 (N.D.Ill.*1995*) (same*); Touhey v. U.S.,* 2011 WL 3179036, 11 (C.D.Cal.,2011) (finding mail, publication, website and toll-free number sufficiently calculated to reach class members and satisfied Rule 23 notice requirements); *In re M3 Power Razor System Marketing & Sales Practice Litigation*, 270 F.R.D. 45, 63 (D. Mass. 2010) (determining notice with 80 percent reach to inform consumers of their rights as class members warranted preliminary approval).

(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Rule 23(c)(2)(b), Fed. R. Civ. P.

The Mailed Notice and Publication Notice attached as Exhibits 2 and 3 to the Settlement Agreement incorporate the content called for under the foregoing Rule 23(c)(2)(b) requirements, and were formatted to be consistent in style and approach to the class notice models available on the Federal Judicial Center's ("FJC") website, www.fjc.gov.[38]  Particularly, the Mailed Notice describes, among other things, the nature of the case, the Settlement Class definition, the claims and defenses, the possibility to appear with counsel, the exclusion rights and process, and the binding effect of a class judgment.[39]   Based on the foregoing, the proposed notice program satisfies the content requirements of Rule 23(c) (2) (b), *Fed. R. Civ. P*. The Mailed Notice and Publication Notice to the Settlement Class should therefore be preliminarily approved as should the Settlement Agreement.

## IV.   THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Eleventh Circuit recognizes the strong public policy favoring the pretrial settlement of class-action lawsuits. *See e.g. In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) and *Cotton*, 559 F.2d at 1331. "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Wm. Wrigley Jr. Co*., 2010 WL 2401149, 3 (citation omitted).  When presented with a proposed

---

[38]     As David Herr notes: "The FJC has tested the form notices for comprehension and identified some principles that will be of value to those drafting such notices." David F. Herr, *Manual for Complex Litigation* § 21.31 at 286, n. 880 (4th ed. 2004).
[39]     Settlement Agreement, Ex. 2, at ¶¶ 2, 5, 13, 14, 15, 19, and 20.

settlement prior to a ruling on class certification, a court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *Id.* But in assessing those certification requirements in the context of a settlement, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

"Under Fed. R. Civ. P. 23…[there are]…four threshold requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ('numerosity'); (2) questions of law or fact common to the class must exist ('commonality'); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('typicality'); and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy of representation')." *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 668 (S.D. Fla. 1997). Also, the movant must show that the case can proceed as a class action under subparts (1), (2), and/or (3) of Rule 23(b). *Fabricant v. Sears Roebuck & Co*., 202 F.R.D. 310, 313 (S.D. Fla. 2001).

## A. The Requirements Of Rule 23(A)(1)-(4) Are Met

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). No specific number is required to satisfy numerosity. However, less than twenty-one members is generally inadequate. *See, e.g., Jones v. Firestone Tire & Rubber Co., Inc*., 977 F.2d 527, 534 (11th Cir.1992) (citations omitted). Impracticability

depends on the facts of each case. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Here, according to Defendants' records, over 7,700 insureds fall within the purview of Plaintiffs' claims and the Settlement Class definition [DE185-2 at¶ 2]. Numerosity is easily met.

    2. <u>Commonality</u>

The second prerequisite to class certification is that "there are questions of law *or* fact common to the class." Fed. R. Civ. P. 23 (a)(2) (emphasis added).  The "threshold of commonality is not high." *Campos v. INS*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citation omitted).  The "Plaintiffs' legal claims need not be completely identical to every Class Member." *Brown v. SCI Funeral Servs. of Fla., Inc*., 212 F.R.D. 602, 604 (S.D. Fla. 2003) (citation omitted). "[F]actual differences concerning treatment [by Defendants] or damages will not defeat a finding of commonality." *Id.*  Moreover, Rule 23(a)(2) "does not require that all of the questions of law and/or fact be common to all the plaintiffs*." Campos v. INS*, 188 F.R.D. at 660. "[C]ourts in the Eleventh Circuit have held that 'a single common question is sufficient to satisfy Rule 23(a)(2) [with respect to commonality].'" *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 685 (S.D. Fla. 2004)(citation omitted).

Named Plaintiffs and Settlement Class Members share several common factual and legal issues sufficient to satisfy the commonality requirement.  Each Settlement Class Member is an individual who: (1) has been one of Defendants' insureds under an in-force Policy which is a form contract; (2) had an insurance Policy providing for "**REPLACEMENT COST MOBILE HOME**" as one of the Additional Coverages of the Policy; (3) allegedly suffered a loss to his/her

mobile home; (4) made a claim for that loss under the Policy; and (5) was paid "policy limits." The underlying legal question for each Named Plaintiff and each Settlement Class Member is whether Defendants allegedly breached the Policy or were unjustly enriched by not providing replacement cost coverage beyond the stated policy limits with the subsidiary common legal questions being: (1) the meaning of "replacement cost" under the Policy; (2) whether the Policy affords full replacement cost coverage beyond the stated policy limits; and (3) whether Defendants settled claims on a "policy limits" versus "replacement cost" basis. As a result, at least one common factual *or* legal question is readily apparent in this case and commonality under Rule 23 is easily satisfied.

3. <u>Typicality</u>

The third prerequisite for class certification is "typicality" set forth in Rule 23(a)(3), which provides that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "[S]ubsection (a)(3) [of Rule 23] primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)(citations omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Campos*, 188 F.R.D. at 659. The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

In this case, each Named Plaintiff, like each Settlement Class Member, was insured under the same standardized Policy. As with each Settlement Class Member, each Named Plaintiff allegedly made a claim for a total loss to his or her home under that Policy. Named Plaintiffs

allege that Defendants failed to settle the claims on a replacement cost basis beyond the stated Policy Limits, and that this violates the Policy terms or is alternatively part of an unjust business practice for them and for Settlement Class Members.  Based on the foregoing, the Named Plaintiffs' interests are aligned with those of each Settlement Class Member, and consequently, the claims of the Named Plaintiffs are typical of the claims of other Settlement Class Members such that the typicality prong of Rule 23 set forth in subpart (a)(3) is met.

    4.  <u>Adequacy of Representation</u>

The fourth and final prerequisite under Rule 23(a) is the "adequacy of representation" requirement contained in Rule 23 (a)(4). The inquiry under Rule 23 (a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted); and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *Id*.  Adequacy of representation is usually presumed in the absence of evidence to the contrary. *Access Now, Inc. v. AHM CGH, Inc.*, 2000 U.S. Dist. LEXIS 14788 (S.D. Fla. 2000) (citation omitted); *accord Sheftelman v. Jones*, 667 F. Supp. 859, 870 (N.D. Ga. 1987)(conflict of interest to render a named representative an inadequate representative must be more than merely speculative or hypothetical).

No actual or potential conflicts exist between Named Plaintiffs and the Settlement Class Members in this case; Named Plaintiffs have previously submitted declarations to that effect.[40] As stated above, Named Plaintiffs are challenging the same alleged unlawful conduct and seeking monetary relief for the benefit of all Settlement Class Members.  The right to relief of Named Plaintiffs, like that of the absent Settlement Class Members, depends upon demonstrating

---

[40]    *See* DE 183-7.

the same pattern of conduct allegedly in violation of the Policy.  Furthermore, according to their declarations filed in the Court record, Named Plaintiffs actively participated in the retention of counsel, monitored and assisted in the litigation, expressed the intention to vigorously prosecute the case on behalf of the Class, and participated in discovery by producing documents and information.[41]  Therefore, the conclusion that Named Plaintiffs are adequate is warranted.

Named Plaintiffs' adequacy is also bolstered by their choice of qualified counsel. Named Plaintiffs have retained counsel not only well versed in complex class litigation, but also highly experienced in insurance matters.  For over twenty (20) years, Plaintiffs' counsel have successfully investigated, commenced and prosecuted class and insurance cases.[42]  In light of this experience, Plaintiffs' counsel are qualified to serve as Class counsel for Rule 23(a)(4) purposes.

**B.  The Requirements of Rule 23(b)(3), Fed. R. Civ. P., are Met**

In addition to meeting the requirements of Rule 23(a), the movant must show that the case can proceed as a class action under subparts (1), (2), and/or (3) of Rule 23(b). *Fabricant*, 202 F.R.D. at 313 (citation omitted).  The settlement entails certification under Rule 23(b)(3). Under Rule 23(b)(3), a movant must show two elements: (1) that common questions predominate over individual questions; and (2) that a class action is a superior procedural vehicle rather than separate individual cases.  Both elements are met here.

1.  <u>Common Questions Predominate</u>

The predominance requirement "'does not require that all issues be common to all parties,' rather, it mandates that 'resolution of the common [liability] questions affect all or a substantial number of the class members.'" *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692

---

[41]  *Id.*
[42]  Aronovitz Decl. at ¶ 2, 4-6.

(N.D. Ga. 2003)(citation omitted). "Courts generally agree that the predominance of common issues does not mean that common issues merely outnumber individual issues." 5-23 *Moore's Federal Practice - Civil* § 23.45; *cf. Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 356 (S.D. Ga. 1996), *aff'd without published opinion*, 117 F.3d 1433 (11th Cir. 1997); (*Gunnels v. Healthplan Servs.*, 348 F.3d 417, 429 (4th Cir. 2003)("Qualitatively…liability issues' may 'far exceed . . . the more mundane individual damages issues.'"). Central to the predominance determination is consideration of "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *In re Tri-State Crematory Litig.*, 215 F.R.D. at 692 (citations omitted). Common questions of law or fact predominate when "there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown*, 212 F.R.D. at 606.

This case is based on a form contract (the Policy) which contains standardized terms. Named Plaintiffs allege one of those terms states that replacement cost coverage is an additional coverage. That statement does not vary throughout the standardized re-iterations of each Class Member's Policy. The alleged liability question at the core of every Settlement Class Member's breach of contract and unjust enrichment claim would be whether or not Defendants owed full replacement cost coverage to each Settlement Class Member irrespective of the stated policy limits. A determination of this core legal question for or against each Settlement Class Member would either materially advance his or her claim or entirely negate it. If the Policy provides or the Class Member is otherwise due full replacement cost coverage, a breach of contract or unjust enrichment would allegedly be shown, and each Settlement Class Member would be allegedly equally entitled to relief. Accordingly, predominance is satisfied.

2.   Class Treatment of Named Plaintiffs' Claims is Superior

The superiority requirement comes down to whether class treatment makes sense.  In this case, the Court should "consider whether the class members would be aware of their rights" absent class certification, and also 'the improbability that large numbers of class members would possess the initiative to litigate individually.'" *Fabricant*, 202 F.R.D. 310, 318 (citation omitted). Class actions are meant to promote "economies of time, effort and expense, assuring uniformity and avoiding repetitive actions." *Fabricant*, 202 F.R.D. at 318.  It would make no sense for court after court to construe the same Policy provisions and it "would be neither efficient nor fair to anyone, including the defendant… to force multiple trials to hear the same [liability] evidence*.*" *Fournigault v. Independence One Mortg. Corp*., 234 F.R.D. 641, 648 (N.D. Ill. 2006)(quotation omitted).   Litigating the predominant legal question about the Policy in one forum makes good sense.  The fact that a core legal question predominates supports that class treatment is superior. "The extent to which any awarded damages must be adjusted to each individual is not fatal to certification…because [such individual damage determination] has traditionally been seen as an inappropriate barrier to applying the efficiencies of Rule 23, and … because there are adequate judicial processes for addressing the problem." *Carnegie v. Household Intern., Inc*., 376 F.3d 656, 661 (7th Cir. 2004);   *Fabricant*, 202 F.R.D. at 317 ("If Plaintiffs are able to establish liability, the Court may either appoint a master to resolve actual damages or merely allow class members to bring individual actions with the benefit of a res judicata finding of liability.") *cf. Brown,* 212 F.R.D. at 606 ("The mere fact that class members will have to file a claim form or affidavit" to prove their eligibility for individual relief does not defeat predominance under Rule 23(b)(3)).

The fact that the Parties have reached a settlement also weighs in favor of a finding that the class mechanism is superior. *See Amchem Prods.*, 521 US at 619-20 ("settlement is relevant to a class certification" and can alleviate manageability concerns that otherwise may arise). Indeed, the *Newberg* treatise explains that in some cases a:

> [c]lass might not have been certified were it not for the proposed class settlement. This observation does not mean that Rule 23 criteria were not applied strictly in these circumstances. On the contrary, these tests were applied, and the observation that a different ruling might have resulted in the absence of the settlement offer refers to the fact that Rule 23 criteria would have been applied in a different context and thus might have led to a different result.

4 *Newberg* §11.27 at 56 (footnote omitted). This case involves the claim(s) of mostly elderly mobile homeowners who purchased Defendants' Policy. Absent a class settlement, the final resolution of this litigation through the trial process may require several more months or years of protracted adversarial litigation and appeals, which will delay relief to over 7700 Settlement Class Members, all of whom suffered damage to their homes four or more years ago. The proofs necessary to prevail at trial in this case would be far greater than what is required under the Settlement. Resolving the claims of this Action through a settlement class is clearly a superior method for handling the claims of Named Plaintiffs and all Settlement Class Members.

## VI.    CONCLUSION

Based on the foregoing, the Parties respectfully request that this Court issue an order granting preliminary approval of the Settlement Agreement and certifying this Action for settlement purposes only along the lines of the proposed order attached as Exhibit 1 to the Settlement Agreement.

DATED:  October 3, 2011.

Respectfully submitted,

**Attorneys for Plaintiffs:**

By: */s/ Tod Aronovitz*
    Tod Aronovitz
    ta@aronovitzlaw.com
    Barbara Perez
    bp@aronovitzlaw.com
    Andrew Zelmanowitz
    az@aronovitzlaw.com
    **ARONOVITZ LAW**
    One Biscayne Tower, Suite 2630
    2 South Biscayne Boulevard
    Miami, Florida 33131
    305-372-2772 Telephone
    305-397-1886 Facsimile

    Steven R. Jaffe
    steve@pathtojustice.com
    Mark S. Fistos
    mark@pathtojustice.com
    **FARMER, JAFFE, WEISSING,**
    **EDWARDS, FISTOS & LEHRMAN, P.L.**
    425 N. Andrews Avenue, Suite 2
    Ft. Lauderdale, Florida 33301
    954- 524-2820  Telephone
    954-524-2822  Facsimile

      and

    Michael H. Lax
    mhlax@laxpa.com
    **MICHAEL H. LAX, P.A**.
    Sunset Square
    9845 Sunset Drive, Suite A-230
    Miami, Florida 33173
    305-256-5529 Telephone
    305-256-5597 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>  /s/ Tod Aronovitz                      </u>

### *SERVICE LIST*
**Appel, et al. vs. Liberty American, et al.**
**Case No. 08-20385-CV-Graham/Bandstra**

**Attorneys for Plaintiffs:**

Tod Aronovitz
ta@aronovitzlaw.com
Barbara Perez
bp@aronovitzlaw.com
Andrew Zelmanowitz
az@aronovitzlaw.com
**ARONOVITZ LAW**
One Biscayne Tower, Suite 2630
2 South Biscayne Boulevard
Miami, FL 33131
305-372-2772 Telephone
305-397-1886 Facsimile

Steven R. Jaffe
steve@pathtojustice.com
Mark S. Fistos
mark@pathtojustice.com
**FARMER, JAFFE, WEISSING,**
**EDWARDS, FISTOS & LEHRMAN, P.L.**
425 N. Andrews Avenue, Suite 2
Ft. Lauderdale, Florida 33301
954- 524-2820 Telephone
954-524-2822  Facsimile

*and*

Michael H. Lax
mhlax@laxpa.com
**MICHAEL H. LAX, P.A**.
Sunset Square
9845 Sunset Drive, Suite A-230
Miami, Florida 33173
305-256-5529 Telephone
305-256-5597 Facsimile

**Attorneys for Defendants:**

William M. Hannay (*Admitted Pro Hac Vice*)
whannay@schiffhardin.com
Marci A. Eisenstein (*Admitted Pro Hac Vice*)
meisenstein@schiffhardin.com
Aphrodite Kokolis (*Admitted Pro Hac Vice*)
dkokolis@schiffhardin.com
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
312-258-5500 Telephone
312-258-5600 Facsimile

*and*

Marcy Levine Aldrich
marcy.aldrich@akerman.com
Christopher S. Carver
christopher.carver@akerman.com
Valerie B. Greenberg
valerie.greenberg@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue
25th Floor
Miami, FL 33131-1714
305-374-5600 Telephone
305-374-5095 Facsimile